[Cite as *State v. Moore*, 2019-Ohio-4586.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| JOSEPH MOORE, | : | Case No. CT2019-0006 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Muskingum County
                               Court of Common Pleas, Case No.
                               CR2018-0614


JUDGMENT:                      Affirmed


DATE OF JUDGMENT:              November 6, 2019


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

D. MICHAEL HADDOX                      JAMES A. ANZELMO
Prosecuting Attorney                   Anzelmo Law
Muskingum County, Ohio                 446 Howland Drive
                                       Gahanna, Ohio 43230
By: TAYLOR P. BENNINGTON
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 44702-0189

*Baldwin, J.*

{¶1}   Joseph Moore appeals the decision of the Muskingum County Court of Common Pleas finding him guilty of possession of methamphetamine, a violation of R.C. 2925.11(A), a fifth degree misdemeanor and possession of marijuana, a violation of R.C. 2925.11(A) a minor misdemeanor.  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}   Deputy Dylan Marple of the Muskingum County Sheriff's office was working the midnight shift when he noticed Appellant make a quick turn without using a turn signal. He followed Appellant and made a traffic stop.  When he approached the vehicle he noticed a passenger in the front right seat, later identified as Sarah Ross.  He told Appellant why he had stopped him and noticed Appellant was agitated as he admitted he was driving with a suspended license.  Deputy Marple also noticed an odor of fresh marijuana coming from the vehicle and Appellant admitted to possession of marijuana. He asked Appellant to exit the vehicle and checked on the status of the suspension.  After discovering the nature of the suspension, Deputy Marple put handcuffs on Appellant, placed him in the rear of his cruiser and had Sarah Ross step out of the Appellant's vehicle and stand at the front of the cruiser.

{¶3}   Once the Appellant and Ms. Ross were out of the vehicle, Deputy Marple searched it and discovered the marijuana in the center console.  Deputy Marple then examined the contents of a purse that was on the floorboard by the front passenger seat and discovered a marijuana grinder and what was later determined to be .21 grams of methamphetamine.

**{¶4}** Deputy Marple then questioned Sarah Ross about the drugs that he found and she claimed them. The Deputy then mirandized Appellant and told him that he had found a marijuana grinder and methamphetamine in addition to marijuana. Appellant was agitated, but admitted that the drugs were his. The Deputy then disclosed that he had found them in a purse and that Ms. Ross had claimed ownership. The Deputy recalls that Appellant stated "just charge me with them, don't charge her, I want to take responsibility for them." (Trial Transcript, p. 141, Lines 5-10). Deputy Marple asked both parties about ownership, because he believed ownership can be shared and, in his experience, drug users often share drugs.

**{¶5}** Detective Jonathan Spon of the Muskingum County Sheriff's office confirmed that multiple users share the same drug and that it is typically the passenger that holds the drugs in a vehicle. Detective Spon explained that the passenger has a greater opportunity and ability to hide drugs during the traffic stop as the officer usually first approaches the driver, and if the driver is removed from the vehicle, the passenger may have the time to conceal the shared drugs without being observed. Detective Spon also explained that, in cases where multiple drugs are involved, a person may admit to possession of only the drug which carries the smallest penalty, typically marijuana.

**{¶6}** Deputy Marple also testified that he deals with marijuana fairly often and that he was able to recognize it by touch, feel and smell. (Trial Transcript, p. 143, lines 14-18). He identified the green, leafy substance in the bag found in the console as marijuana in an amount less than 100 grams. When questioned regarding testing of the marijuana he explained that the Ohio Bureau of Criminal Investigation would not test less than 100 grams and he was not authorized to have testing performed at an alternative

lab. Scott Miller, forensic scientist at the Ohio Bureau of Criminal Investigation, confirmed the policy of not testing less than 100 grams.

**{¶7}** Scott Miller also confirmed that the substance in the bag found in the purse was .21 grams of methamphetamine.

**{¶8}** Appellant did present the testimony of Sarah Ross, presumably to establish her exclusive possession of the methamphetamine. She had previously pled guilty to possession of the methamphetamine, but her testimony in the case below regarding possession of the drug was ambivalent at best. She agreed that she was questioned several times about the methamphetamine and that she "told them that I was unaware that it was in there, but if it was in my property, then I would be the one that they would have to charge with the methamphetamines." (Trial Transcript, p. 213, lines 20-23). When asked whether the methamphetamine that was found was hers she stated "It was found in my purse, so I assume, yes." (Trial Transcript, p. 212, lines 20-23). She also "assumed" the marijuana grinder was hers, but never expressly stated that the methamphetamine or the marijuana grinder were in her exclusive possession.

**{¶9}** Prior to charging the jury, the trial court dismissed the charge of possession of drug paraphernalia, (R.C. 2925.141(C)) for lack of evidence. The jury considered the remaining charges and returned a verdict of guilty. Appellant filed a timely appeal and submitted two assignments of error:

**{¶10}** "I. MOORE'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

**{¶11}** "II. MOORE'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

### STANDARD OF REVIEW

**{¶12}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶13}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, at 387. Reversing a

conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶14}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**ANALYSIS**

**{¶15}** Appellant was charged with two violations of R.C. 2925.11(A) which states "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant argues that the Appellee has failed to prove that the alleged marijuana was marijuana and that Appellee has not established that Appellant possessed the methamphetamine.

**{¶16}** Appellant contends there was no testing on the substance Deputy Marple believed was marijuana and thus insufficient evidence that the substance actually was marijuana. Deputy Marple testified that he dealt with marijuana often and that he was able to recognize marijuana by the touch, feel and smell. He identified the photograph of the bag of material he collected from the console of Appellant's vehicle and confirmed that he placed it into evidence and then testified that it was marijuana. He explained the policy of the Sheriff's Office and the Bureau of Criminal Investigation (BCI) is to not test small amounts of marijuana (less than 100 grams). BCI would not accept this amount for testing and the Sheriff's Office did not use other facilities for testing.

{¶17} Laboratory testing in this case was not needed as "Ohio courts have held that lab testing is not always necessary to prove the identity of a substance. For example, the Supreme Court of Ohio has held that police officers trained and qualified may testify that a substance is marijuana without a laboratory test as long as there is a sufficient foundation laid to establish familiarity with the drug. *State v. Thompson*, 11th Dist. Portage No. 2015-P-0034, 2016-Ohio-5571, ¶ 34. We find in this case that "the trial court *** made an initial determination that the witness possessed sufficient experience or specialized knowledge, thus satisfying the rule's requirements that the opinion be both "helpful to a clear understanding * * * of a fact in issue" and "rationally based" upon the witness's perception." *State v. McKee*, 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737 (2001), quoting *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng.*, 57 F.3d 1190, 1198 (3d Cir.1995).  In the context of this case, we hold that sufficient evidence was introduced to allow the jury to make the final decision regarding the identity of the substance that was purportedly marijuana.

{¶18} Appellee did present testimony demonstrating that the crystalline substance was methamphetamine, but Appellant claims there is insufficient evidence that he actually possessed it.  Possession may be actual or constructive. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982); syllabus. We find that Appellant actually possessed the drug because when he was first confronted with Deputy Marple's discovery, he admitted that the drug was his without reservation.  When he was told it was found in a purse, and that Ms. Ross admitted the drug was hers, he stated "he said just charge me with them, don't charge her, I want to take responsibility for them." (Trial Transcript, p. 141, lines 9-10). While Appellant argued that his statement should not be interpreted as

admitting possession, we find that it can be reasonably interpreted as conceding possession leaving the final determination for the jury.

**{¶19}** Sarah Ross's testimony was far from supportive of Appellant's argument since she only "assumed" that the drug was hers because it was found in her purse and did not claim exclusive possession. Further, her alleged ownership of the drug does not rule out Appellant's joint possession. *State v. Wolery,* 46 Ohio St.2d 316, 322, 348 N.E.2d 351 (1976).

**{¶20}** Even if we would disregard Appellant's admission of possession, we would find sufficient evidence to establish constructive possession.  To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery,* 46 Ohio St.2d 316, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist.2000). "Furthermore, when 'one is found to be the driver of a car in which drugs are within easy access of the driver, constructive possession will be established." *State v. Miller* (July 27, 1999), 4th Dist. No. 98 CA 2467, 98 CA 2467, quoting *State v. Kurtz* (Oct. 27, 1998), 10th Dist. No. 98AP–210, *quoting State v. Ray,* 9th Dist. Medina No. 03CA0062-M, 2004-Ohio-3412, ¶ 23.

**{¶21}** The methamphetamine was found in a purse in Appellant's car, in very close proximity to Appellant and arguably subject to his dominion and control, supporting a conclusion that even if Appellant did not actually possess the drug, the jury could conclude that he constructively possessed it.

**{¶22}** After viewing the evidence in a light most favorable to the prosecution, we hold that any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt and we further find that this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶23} Appellant's first and second assignments of error are denied and the decision of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, Earle, J. concur.