OPINION *Page 2 
{¶ 1} Defendant-appellant, Eric Cenker, appeals his convictions and sentences in the Richland County Court of Common Pleas on one count of possession of oxycodone in violation of R.C. 2925.11(A), and one count of illegal conveyance of drugs onto the grounds of a detention facility in violation of R.C. 2921.36(A)(2). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} On April 28, 2004, officers at the Richland Correctional Institution intercepted the appellant, Eric Cenkner, as he arrived to visit Inmate Kevin Sebald at the Mansfield Correctional Institution. The appellant and Inmate Sebald had been the subject of an investigation involving the illegal conveyance of drugs into the institution. The investigation started when Inmate Jason Gearhart wrote a letter to institutional investigator Russell Albright implicating Inmate Sebald in the dealing of Oxycontin within the prison. The letter also indicated that a conveyance of Oxycontin 40s to Inmate Sebald would take place on April 28, 2004. As a result of the letter, Investigator Albright contacted Trooper Kevin Smith, who assisted in the criminal investigation.
 {¶ 3} Prior to the anticipated conveyance on April 28, 2004, Trooper Smith testified that he contacted Trooper Redden, another highway patrolman assigned to the institution, to advise him of the situation. (1T. at 123). He also notified Officer Mistachio, who was in charge of visiting, to contact them if any visitors came in for Inmate Sebald on April 28, 2004. (Id.). Trooper Smith indicated that at around 8:30 a.m., Officer Mistachio telephoned the investigator's office to advise that Inmate Sebald's visitor had *Page 3 
arrived and was being processed into the visiting area. (Id.). At that point, he proceeded to the visiting area and made contact with the appellant. (1T. at 125).
 {¶ 4} Trooper Smith took the appellant into a nearby parole board room to interview him while Trooper Redden and Investigator Albright took Dion Jones, the woman who arrived at the institution with the appellant, to a separate room. (1T. at 129-131). During the interview, the appellant volunteered to a strip search. (1T. at 134). When no illegal substances were found on his person, the officers asked for permission to search his vehicle. (1T. at 137). The appellant refused to consent to search his vehicle. (Id.).
 {¶ 5} Trooper Smith testified that, he wanted to search the vehicle because the appellant and Ms. Jones gave completely opposite stories about how they arrived at the institution, and the appellant did not have a driver's license. (1T. at 134-135). He indicated that he had some concerns about the vehicle the appellant drove to the institution because drugs can be conveyed into the institution by dropping them off outside to be picked up by an inmate working outside the institution. (1T. at 135). Trooper Smith testified that despite the appellant's refusal to consent, he determined he had probable cause to search the vehicle based upon the differing stories given by the appellant and Ms. Jones; the fact that the appellant was not the owner of the vehicle; and the signs posted at the institution which indicate that persons and property are subject to search. (1T. at 138).
 {¶ 6} After obtaining the keys for the white Buick Roadmaster which the appellant drove to the prison, Trooper Smith proceeded to search the vehicle in the appellant's presence. (1T. at 139). Upon looking in the passenger window, he observed *Page 4 
pill bottles inside the vehicle. (Id.). Trooper Smith testified that in the driver's side door compartment, he discovered a black leather zippered container. (1T. at 140). Inside, he found $100.00 in cash, an expired driver's license belonging to the appellant, a driver's license belonging to Inmate Sebald, a South Carolina identification card belonging in the appellant, a social security card, a bank card, and six tan pills. (1T. at 141-142). Trooper Smith testified that he seized the contents of the container and took it back into the institution to be photographed and recorded. (1T. at 143). When he asked the Appellant about the pills, he indicated that they were Oxycontin. (Id.).
 {¶ 7} The pills were packaged and sent to the Ohio Highway Patrol Crime Lab for analysis. (1T. at 144-145). Brandon Werry, the criminalist who performed the analysis, testified that he received six tan round pills marked OC 40. (2T. at 207). The pills were found to contain.813 grams of Oxycodone, a schedule II controlled substance. (Id).
 {¶ 8} During the appellant's trial, there was also testimony regarding signs posted at the prison warning visitors about bringing in prohibited items. Both Trooper Smith and Investigator Albright testified that there is a sign posted in the visitor's parking lot stating that it is against state law to carry weapons, contraband, or drugs into the facility or onto the grounds of the institution. (1T. at 108, 190). Similar signs are posted in the entryway to the institution. (1T. at 109-110, 190). Additionally, on October 16, 2003, the appellant signed a declaration of understanding detailing the prison's policy prohibiting visitors from bringing drugs, weapons, or intoxicating liquors into the institution. (1T. at 124). *Page 5 
 {¶ 9} Based upon the investigation and the evidence discovered in the search of the appellant's vehicle, he was indicted on one count of possession of drugs in violation of R.C. 2925.11. (Case No. 2004-CR-825H). He was later indicted in Case No. 2005-CR871H for one count of illegal conveyance in violation of R.C. 2921.36(C).
 {¶ 10} In November of 2005, the State moved for joinder of the two cases for purposes of trial. The trial court granted the State's request on December 22, 2005. The Appellant's counsel did not file an objection to the joinder at the time of the State's request; however, he did move to sever the cases at the start of the appellant's trial. The trial court denied the request, and the cases proceeded to trial on February 13-14, 2006.
 {¶ 11} At the conclusion of the appellant's trial, the trial court instructed the jury on the offenses of possession of drugs, and illegal conveyance as defined under R.C. 2921.36(C). Additionally, the trial court instructed the jury on the "lesser included offense" of illegal conveyance under R.C. 2921.36(A) (2). On the basis of those instructions, the jury deliberated and found the appellant guilty of possession of drugs. The jury acquitted the appellant of illegal conveyance under R.C. 2921.36(C) as charged in the indictment, but convicted him of the "lesser included offense" of illegal conveyance under R.C. 2921.36(A) (2).
 {¶ 12} On April 12, 2006, the trial court sentenced the appellant to six months in prison on the charge of possession of drugs, to run consecutive to the one year sentence it imposed on the charge of illegal conveyance. The Court suspended the eighteen month prison sentence on condition that the appellant successfully complete three years of community control. *Page 6 
 {¶ 13} Appellant filed a timely notice of appeal and herein raises the following six assignments of error for our consideration:
 {¶ 14} "I. THE TRIAL COURT ERRED TO DEFENDANT-APPELLANT'S PREJUDICE WHEN CONVICTING HIM FOR THE OFFENSES OF POSSESSION AND ILLEGAL CONVEYANCE, ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE TO THE CONSTITUTIONS OF THE UNITED STATES AND OHIO AND OHIO REVISED CODE 2941.25.
 {¶ 15} "II. THE DEFENDANT-APPELLANT'S CONVICTION AND SENTENCE MUST BE REVERSED BECAUSE HE WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 TO THE OHIO CONSTITUTION.
 {¶ 16} "III. THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE AND COMMITTED PLAIN ERROR WHEN IT GAVE INSTRUCTIONS TO THE JURY THAT (1) PERMITTED THEM TO CONSIDER AN `LESSER INCLUDED OFFENSE,' (2) OMITTED THE NECESSARY REQUISITE MENTAL STATE FOR THE OFFENSE, AND (3) FAILED TO DEFINE THE TERM `CONVEY' AND STATE TO THE JURY THAT THE DIFFERENCE BETWEEN R.C. 2921.36 (C) AND (A) WAS THE ABSENCE OF THE REQUIREMENT OF DELIVERY OR ATTEMPTED DELIVERY.
 {¶ 17} "IV. THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE AND ABUSED ITS DISCRETION WHEN IT OVERRULED THE DEFENDANT APPELLANT'S MOTION FOR A NEW TRIAL. *Page 7 
 {¶ 18} "V. THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S CRIM. R. 29 MOTION FOR ACQUITTAL.
 {¶ 19} "VI. THE DEFENDANT-APPELLANTS CONVICTIONS AND SENTENCE MUST BE REVERSED BECAUSE THEY ARE BASED ON INSUFFICIENT EVIDENCE."
 II. {¶ 20} Because we find appellant's second assignment of error dispositive of the majority of appellant's claims we shall address it first.
 {¶ 21} In his second assignment of error, appellant argues that he was denied effective assistance of trial counsel. We agree.
 {¶ 22} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 23} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a *Page 8 
strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 24} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 25} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 26} In the case at bar, appellant was charged with a violation of R.C. 2921.36(C), which provides: "(C) No person shall knowingly deliver, or attempt to deliver, to any person who is confined in a detention facility or to any patient in an institution under the control of the department of mental health or the department of mental retardation and developmental disabilities, any item listed in division (A) (1), (2), or (3) of this section".
 {¶ 27} The trial court instructed the jury on R.C. 2921.36(C); however, the trial court further instructed the jury on the "lesser included offense" of R.C. 2921.36(A)(2), which provides: "(A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution that is under the control of the *Page 9 
department of mental health or the department of mental retardation and developmental disabilities, any of the following items: * * * (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code. . . ."
 {¶ 28} R.C. 2921.36(G) (2) defines the penalties for a violation of the statute as: "(2) Whoever violates division (A) (2) of this section or commits a violation of division (C) of this section involving any drug of abuse is guilty of illegal conveyance of drugs of abuse onto the grounds of a detention facility or a mental health or mental retardation and developmental disabilities institution, a felony of the third degree. If the offender is an officer or employee of the department of rehabilitation and correction or of the department of youth services, the court shall impose a mandatory prison term. . . ."
 {¶ 29} In State v. Koss (1990), 49 Ohio St.3d 213, the Ohio Supreme Court adhered to its earlier holdings regarding the nature of lesser included offenses and their applicability in a given case. The court interpreted R.C. 2945.74 (the so-called lesser included offense statute) as follows:
 {¶ 30} "`An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other, (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (State v. Kidder, 32 Ohio St.3d 279
[1987]. 513 N.E.2d 311, modified).'" (Quoting State v. Deem40 Ohio St.3d 205 (1988), at paragraph three of the syllabus.)
 {¶ 31} In its Judgment Entry overruling appellant's motion for a new trial filed March 28, 2006, the trial court conceded that R.C. 2921.36
(A) is not a lesser included *Page 10 
offense of R.C. 2921.36(C). As both are classified as felonies of the third degree the offenses fail the first prong of the so-calledDeem test. Accordingly, one cannot be a lesser included offense of the other.
 {¶ 32} The State of Ohio concedes in this appeal that illegal conveyance under R.C. 2921.36(A) (2) is not a lesser included offense of R.C. 2921.36(C) delivering or attempting to deliver. (Appellee's Brief at 6; 7; 11). The State further concedes that the trial court erred in instructing the jury on R.C. 2921.36(A) (2) when it is not a lesser included offense of R.C. 2921.36(C). (Id. at 11 ).
 {¶ 33} Prior to the commencement of closing arguments the trial court in the case at bar stated: "[w]e're ready to proceed with the closing arguments. There had been discussions and a request by the Defendant to put on a lesser included illegal conveyance charge, and I've incorporated that into the charge to be given to the jury at the request of the Defendant." (2T. at 251). Defense counsel did not object to the trial court's representation, nor did counsel object to the jury charge. (Id. at 251; 288).
 {¶ 34} Further it is clear from the record that the State was not requesting that the trial court amend the indictment to illegal conveyance pursuant to R.C. 2921.36(A) (2). (2T. at 219-221). In his Crim. R. 29(A) motion for acquittal made at the conclusion of the State's case-in-chief, appellant's trial counsel argued "[t]he only evidence presented to this — the only competent evidence presented to the jury was that he may — whether the knowingly part is yet to be disputed, but that he transported what was found to be Oxycontins onto the premises, not any attempt to deliver into the facility itself. It was found out in the parking lot. 2921.36(A) prohibits just that kind of conduct. That is to transport or convey contraband . . . So the evidence presented does not even make a *Page 11 
prima facie case that he knowingly attempted to deliver anything inside to an inmate, only that he brought it onto the grounds, which according to this section, is a violation if done knowingly. And consequently, the charge under — as indicted has not been presented in a prima facie case to the jury. Therefore it should be directed out." (2T. at 216-18). In response to the appellant's motion to acquit the prosecuting attorney stated: "Your Honor, as I've already pointed out, the fact that another statute has some application to the facts of this case is not the test the Court is to use at this stage of the proceedings. . . ." (Id. at 219).
 {¶ 35} The prejudice to appellant is obvious. The jury returned a unanimous verdict finding appellant not guilty of delivering or attempting to deliver pursuant to R.C. 2921.36(C) the offense charged in the Indictment. (2T. at 291; Verdict Form, filed February 16, 2006). Had the erroneous instruction not been given, the State could not have a second bite of the apple, so to speak, by moving to amend the indictment after the jury acquitted appellant.
 {¶ 36} Accordingly, appellant's second assignment of error is sustained. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, the conviction and sentence on one count of illegal conveyance of a drug of abuse onto the grounds of a detention facility pursuant to R.C. 2921.36(A) (2) is vacated.
 I., III., IV, V. {¶ 37} In light of our disposition of appellant's second assignment of error we find appellant's first, third, fourth and fifth assignments of error to be moot. *Page 12 
 VI. {¶ 38} In his sixth assignment of error appellant argues that his conviction for possession of oxycodone is based upon insufficient evidence. We disagree.
 {¶ 39} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight.
 {¶ 40} Sufficiency of the evidence is a question of law for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. A claim that evidence is insufficient to support a conviction as a matter of due process depends on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt ." Jackson v.Virginia (1979), 443 U.S.307, 319, 99 S.Ct.2781, 2789. (Emphasis in original).
 {¶ 41} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the *Page 13 
judgment." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 42} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 43} In the case at bar, appellant was charged with possession of oxycodone in violation of R.C. 2925.11(A) which states: "(A) No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 44} The culpable mental state of "knowingly" is defined as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). *Page 14 
 {¶ 45} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).
 {¶ 46} R.C. 2925.01 (K) defines possession as follows: "`Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D) (1).
 {¶ 47} Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. State v. Barr *Page 15 
(1993), 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248; State v.Morales, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714
at ¶ 50; State v. Moses, 5th Dist. No. 2003CA00384,2004-Ohio-4943 at ¶ 9. Ownership of the drugs need not be established for constructive possession. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing State v. Mann, (1993)93 Ohio App.3d 301, 308, 638 N.E.2d 585. Furthermore, possession may be individual or joint. Wolery, 46 Ohio St.2d at 332, 348 N.E.2d 351.
 {¶ 48} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction."' State v. Jenks (1991), 61 Ohio St.3d 259, 272,574 N.E.2d 492 at paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value [.]"' Jenks, 61 Ohio St .3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."' Jenks, 61 Ohio St.3d at 272,574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168,555 N.E.2d 293, citing Hurt, 164 Ohio St. at 331, 130 N.E.2d 820. *Page 16 
 {¶ 49} Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of the possession of drugs offense. A reasonable juror could have found that, at the least, appellant had dominion and control over and constructive possession of the vehicle containing the drugs, and that he had knowledge of drugs found inside the vehicle. See Hankerson, 70 Ohio St.2d at syllabus. The State had presented evidence that together with the oxycodone, the police recovered an expired driver license belonging to appellant, a driver license belonging to Inmate Kevin Sebald, a South Carolina identification card belonging to the appellant, a Visa card belonging to appellant, and a Giant Eagle card belonging to appellant from inside the black leather container. (1T. at 142-43). Thus appellant could have exercised dominion and control over the container and the contents of the container. See, e.g., State v. King (Sept. 18, 1996), 9th Dist. No. 95CA006173.
 {¶ 50} Viewing this evidence linking appellant to the vehicle and hence the drugs located inside the black leather container found in the driver's side door compartment of the vehicle in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime as set forth in the indictment.
 {¶ 51} We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction. *Page 17 
 {¶ 52} The arguments that appellant may have not owned the vehicle, nor was it registered in his name, and that the drugs and other items found may not have actually belonged to him, are ultimately inconsequential. See Smith at ¶ 13. See, e.g., State v. Grundy (Dec. 9, 1998), 9th Dist. No. 19016, citing State v. Johnson (July 11, 1990), 9th Dist. No. 14371.
 {¶ 53} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 54} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 55} Although appellant presented testimony that his mother had a prescription for the drugs in question and that the black leather container also belonged to her in an attempt to demonstrate that his mother had left the drugs inside the vehicle without his knowledge, the trier of fact was free to accept or reject any and all of the evidence *Page 18 
offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence".State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citingState v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61,67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667,607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 56} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant possessed the oxycodone.
 {¶ 57} Accordingly, appellant's conviction for the possession of oxycodone was not against the manifest weight of the evidence.
 {¶ 58} Appellant's sixth assignment of error is overruled. *Page 19 
 {¶ 59} For the foregoing reasons, the judgment of the Court of Common Pleas for Richland County, Ohio is affirmed in part and vacated in part. On the authority contained in Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, appellant's conviction and sentence for one count of illegal conveyance of a drug of abuse onto the grounds of a detention facility pursuant to R.C. 2921.36(A) (2) is vacated.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas for Richland County, Ohio is affirmed in part and vacated in part. Costs to appellee. *Page 1